THOMAS J. JEFFREYS                    :

PLAINTIFF                             :

FILED

OCT 20    3 30 PM '03

U.S. DISTRICT COURT
CIVIL ACTION NO:
NEW HAVEN, CONN.

VS                                   :

:    3:03 V 460 (MRK)

TEAMSTERS LOCAL UNION NO: 1150       :

DEFENDIANT                           :    OCTOBER 19, 2003


## MOTION FOR SANCTIONS


1) PLAINTIFF FILES THIS MOTION FOR SANCTIONS, UNDER CIVIL RULE'S OF PROCEDURE RULE 36, 36 (a), 37, 37 (c)(2). ADMISSION AND FAILURE TO DISCLOSES; FALSE OR MISLEADING DISCLOSURE; REFUSAL TO ADMIT, ALSO FAILURE UNDER CIVIL RULE 34, PRODUCTION OF DOCUMENTS.


2) PLAINTIFF STATES CIVIL RULE 36, 36(a), REQUESTS FOR ADMISSION, THE PARTY WHO HAS REQUESTED THE ADMISSIONS MAY MOVE TO DETERMINE THE SUFFICIENCY OF THE ANSWERS OR OBJECTIONS. UNLESS THE COURT DETERMINES THAT AN OBJECTION IS JUSTIFIED, IT SHALL ORDER THAT AN ANSWER BE SERVED, IF THE COURT DETERMINES THAT AN ANSWER DOES NOT COMPLY WITH THE REQUIRE — MENTS OF THIS RULE, IT MAY ORDER EITHER THAT THE MATTER IS ADMITTED OR THAT AN AMENDED ANSWER BE SERVED.


3) PLAINTIFF STATES UNDER CIVIL RULE 37, 37(c)(2), FAILURE TO DISCLOSE; FALSE OR MISLEADING DISCLOSURE; REFUSAL TO ADMIT, ALSO RULE 37 (3) EVASIVE OR INCOMPLETE DISCLOSURE, ANSWER, OR RESPONSE. (2) IF A PARTY FAILS TO ADMIT THE GENUINENESS OF ANY DOCUMENT OR THE TRUTH

1

OF ANY MATTER AS REQUESTED UNDER RULE 36, AND IF THE PARTY REQUESTING THE ADMISSIONS THEREAFTER PROVES THE GENUINENESS OF THE DOCUMENT OR THE TRUTH OF THE MATTER, THE REQUESTING PARTY MAY APPLY TO THE COURT FOR ORDER REQUIRING THE OTHER PARTY TO PAY THE REASONABLE EXPENSE INCURRED IN MAKING THAT PROOF, INCUDING REASONABLE ATTORNEY'S FEES

4) PLAINTIFF NOW STATES THAT ON AUGUST 18, 2003 PLAINTIFF SERVED ON DEFENDANT 6 PAGES FOR ADMISSIONS, WHICH DEALS IN PART WITH GENUINENESS OF DOCUMENTS FROM THE COLLECTIVE BARGAINING AGREEMENT BOOK, AND ALSO FROM THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS CONSTITUTION BOOK. PLAINTIFF ONLY ASKED FOR ADMISSIONS OF THE GENUINENESS OF THE PAGES THAT DEAL WITH THIS CIVIL SUIT. PLAINTIFF UNDER RULE 36 ADMISSION IS NOT REQUIRE UNDER ADMISSION TO SUMMIT THE WHOLE CONTRACT BOOK, ONLY THE PAGES THAT DEAL WITH THIS CIVIL SUIT.

5) PLAINTIFF STATES ON SEPTEMBER 17, 2003, THE RESPONSE FROM DEFENDANT ON THE GENUINENESS OF DOCUMENTS OR PAGES FROM THE COLLECTIVE BARGAINING AGREEMENT OF DEFENDANT, DEFENDANT IN THEIR ADMISSION OF SEPTEMBER 17, 2003 PAGE 1 A.) ADMITTED THERE EXISTED A COLLECTIVE BARGAINING AGREEMENT. BUT ON LINE 1. DENIED, PAGES SUPPLIED BY THE PLAINTIFF WERE FROM THE COLLECTIVE BARGAINING AGREEMENT. PLAINTIFF HAS ENCLOSED PLAINTIFF'S APPENDIX A. WHICH SHOWS A COPY OF THE COVER OF THE COLLECTIVE BARGAINING AGREEMENT. THIS ANSWER WAS EVASIVE AND MISLEADING DISCLOSURE. THIS APPENDIX A ENCLOSED BY PLAINTIFF IS CLEARLY DOCUMENTS OF PAGES FROM DEFENDANTS COLLECTIVE BARGAINING AGREEMENT'S. THEREFORE A SIMPLE ADMISSION OF ADMIT WAS REQUIRED NOT PAGES ARE MISSING. ALSO THAT TWO COPIES FROM TWO DIFFERENT DOCU-

MENTS FOUND, PLAINTIFF HAD STATED IN THE ADMISSIONS OF AUGUST 18, 2003 THAT THERE WAS TWO CONTRACT'S INVOLVED 1990 AND 1993.

6) PLAINTIFF ALSO STATES UNDER ADMISSION SERVED AUGUST 18, 2003 PLAINTIFF ASKED DEFENDANT TO ADMIT TO THE GENUINENESS OF THE TEAMSTER CONSTITUTION BOOK OF JUNE 14-17, 1976 WHICH PLAINTIFF HAS ALSO ENCLOSED AS APPENDIX B. PLAINTIFF DOES NOT HAVE TO IN ADMISSION COPY THE WHOLE BOOK, ONLY PAGES THAT DEAL WITH THIS CIVIL SUIT. AS PLAINTIFF APPENDIX B SHOWS, PLAINTIFF INCLUDED COVER OF THE TEAMSTERS CONSTITUTION DEFENDANT WAS EVASIVE IN THEIR ANSWER AND ALL WAS REQUIRED WAS ADMIT OR DENY. DEFENDANT STATED IN PARAGRAPH C BOTTOM AND LINE a) AND I QUOTE IF PLAINTIFF HAS ACCURATELY REPRESENTED THAT PLAINTIFF'S " APPENDIX B " ARE PAGES FROM THE 1976 CONSTITUTION. THE ADMISSION WAS ARE THESE DOCUMENTS FROM PLAINTIFFS APPENDIX B LIST PAGE BY PAGE FOUND IN THE TEAMSTERS CONSTITUTION BOOK OF JUNE 14-17, 1976. NOT IF PLAINTIFF HAS ACCURATELY REPRESENTED PLAINTIFF. DENY TO THE EXTENT THAT NO ACTUAL QUESTION IS PRESENTED WAS, DEFENDANTS RESPONSE." ENCLOSED " PLAINTIFF WAS ASKING GENUINENESS OF THESE PAGES. THAT IS REASONING FOR PLAINTIFF DOING THIS ADMISSION BECAUSE IN THE PAST DEFENDANT HAS DENIED MY RIGHTS.

7) PLAINTIFF WOULD ALSO STATE ON SEPTEMBER 18, 2003 PLAINTIFF MADE A PHONE CALL TO MR. FUSSELL ABOUT DEFENDIANTS ANSWER OF ADMISSION. MR FUSSELL STATED DEFENDANT WAS STICHING TO THE SWORN ANSWERS.

8) PLAINTIFF RESPECTFULLY ASK THIS COURT AFTER THIS COURT REVIEWS PLAINTIFF'S " APPENDIX A " AND " APPENDIX B " ASK THE DEFENDANT TO

3,

ADMIT TO THE GENUINENESS OF THESE DOCUMENTS. ALSO THAT PLAINTIFF BE ALLOWED EXPENSE INCURRED FOR COPIES, MAILING, GAS, AND PHONE CALL. FOR ALL PLAINTIFF WAS ASKING GENUINENESS OF "APPENDIX A" AND "APPENDIX B",

9/ PLAINTIFF WOULD ALSO STATE UNDER CIVIL RULE OF PROCEDURE RULE 34, PRODUCTION OF DOCUMENTS. ON SEPTEMBER 19, 2003 PLAINTIFF SERVED REQUEST FOR THE SUPERSEDED CONSTITUTION AFTER THE ONE OF JUNE 14-17, 1976. WHICH DEFENDANT THEMSELVES HAD QUESTION THEIR WAS ONE. PLAINTIFF REQUESTED THE BOOK (CONSTITUTION) OF TEAMSTERS DATED BEFORE JUNE 25, 1993. 30 DAYS HAS GONE BY NO RESPONSE.

10/ PLAINTIFF RESPECTFULLY ASK THIS COURT TO ORDER DEFENDANT TO COMPLY WITH THE NEW TEAMSTERS CONSTITUTION BOOK PUBLISHED BEFORE JUNE 25, 1993, IF THEIR IS ONE.

RESPECTFULLY
PLAINTIFF PRO-SE

Mr. Thomas J. Jeffreys
MR. THOMAS J. JEFFREYS
539 COOKE STREET
WATERBURY, CT. 06710
TELE. (203) 597-9755
OCT. 19, 2003

4/

# APPENDIX #A

## BARGAINING AGREEMENT

## BETWEEN TEAMSTERS AND SIKORSKY



## AGREEMENT

This agreement is made and entered into this 12th day of February, 1990, by and between United Technologies Corporation for and on behalf of its Sikorsky Aircraft Division, hereinafter called the "Company," and the Sikorsky Teamsters Local 1150, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, hereinafter called the "Union." It is understood and agreed to by the Company and the Union that this agreement supersedes and supplements any and all previous agreements which they heretofore have entered into.

## PURPOSE

It is the intent and purpose of the parties hereto that this agreement promote and improve the industrial and economic status of the parties, provide orderly collective bargaining relations between the company and the union, and secure a prompt and fair disposition of grievances so as to eliminate interruptions of work and interference with the efficient operation of the company's business.

## ARTICLE II
## Coverage

## ARTICLE III
## Recognition

2.2   The term "employee" as used herein shall not apply to and shall exclude all salaried employees, professional employees, employees of the engineering, test laboratories, plant protection employees, health and safety employees, clerical employees, sales personnel, special employees, typists, stenographers, clerks, timekeepers, secretaries, executives, supervisors, superintendents, general foremen, foremen, group supervisors and foremen, and supervisors as defined in the National Labor Relations Act, as amended.

## ARTICLE IV
## Nondiscrimination

4.1 The Company and the union recognize that employees covered by this agreement may not be discriminated against in violation of provisions of the Labor Management Relations Act of 1947, as amended, or on the basis of race, color, sex, age, religion, national origin, veteran status, or disability.

4.2 Both the company and the union recognize that employees covered by this agreement have the right to retire to become or remain members of the union without being subject to restraint or coercion from either the union or the company or to restrain their exercise of this right.

4.3 There shall be no solicitation of employees for union membership or dues conducted upon the premises of the company during times when either the employee (or employees) being solicited or the employee (or employees) performing such solicitation are being paid by the company to perform work.

5

## ARTICLE V
## Checkoff

5.1 The company agrees to deduct monthly union dues in whatever sum is established by the local union as the regular monthly dues uniformly required of each member, and to continue such deductions from the pay of an employee on a properly executed assignment card which is delivered to the company. The company also agrees to deduct from the earnings of an employee one (1) initiation fee in whatever amount is authorized by such employee on a properly executed assignment card which is delivered to the company.

5.2 The sum which represents such monthly union dues shall be certified to the company by the duly authorized financial officer of the local union. The company's obligation to deduct a certified sum shall be altered only if the amount deducted from the earnings of an employee who has authorized such deduction shall not be increased or decreased until 10 days written notice of such change has been received by the company from the duly authorized financial officer of local 1150.

5.3 The form of the assignments and the procedure for giving effect to this Article is attached hereto as Appendix A and made a part of this agreement.

5.4 The deduction of the first monthly dues and the initiation fee shall be made from the earnings received by the employee on the third Thursday of the month following the month in which a properly executed assignment is received by the company. Union dues will be deducted monthly thereafter from the earnings received by the employee on the third Thursday of each month.

5.5 Deductions provided for in Section 5.4 shall be remitted to the secretary-treasurer of the union not later than the tenth day of the month following the month in which the deduction is made. The company shall simultaneously furnish the secretary-treasurer of the union with a record of the employees from whose earnings deductions have been made and the amounts of the deductions.

5.6 The company's obligation to make such deductions shall terminate automatically upon termination of the employee who signed the authorization or upon his/her transfer to a plant, department, or job not covered by this agreement, except that the deductions shall be resumed if an employee, terminated by layoff, is rehired with seniority rights and no period of revocation intervened during his/her layoff period.

5.7 The union agrees that it will indemnify and save the company harmless from any and all liability, claim or damage or suit which may arise out of any action taken by the company in accordance with the terms of this Article or in reliance upon the authorization described herein, the amount not to exceed the sum received by the union on account of the deductions made from the earnings of such employee or employees.

5.8 It is agreed that the company shall honor check-off assignment cards only when such cards are properly executed in the form, basic color, paper stock and size of the sample attached hereto and made a part of this agreement.

6

## ARTICLE VI

### Grievance Procedure

6.1    The number of shop stewards and the area of the shop which each steward shall represent for the purpose of adjusting grievances, and the grievance procedure shall be determined by the Union. The number of shop stewards and the areas which they represent shall be subject to review upon the request of either the company or the union.

6.2    Shop stewards shall be active employees of the company. No steward shall act as a steward unless at the time of his/her selection he/she has not less than six (6) months' seniority as defined herein.

6.3    In the event that a difference arises between the company, the union, or any employee concerning the interpretation, application, or compliance with the provisions of this agreement, an effort will be made to resolve it in accordance with the following procedure which must be adhered to:

#### STEP 1

6.4    An employee having a grievance affecting wages, hours or working conditions may, after giving notice to his/her immediate supervisor, take it up either directly with his/her supervisor or with the area shop steward.

6.5    A grievance of an employee must be presented orally at this step to the employee's immediate supervisor by the steward. A meeting between the area shop steward, the employee concerned, the supervisor and a management representative, and a management representative from the company's Human Resources department, shall attend in place of the supervisor(s) and/or immediate supervisor. Any such discussions representative will be scheduled as soon as possible. The supervisor shall be as brief as possible. The supervisor and management representative shall render a decision within five (5) working days, excluding Saturday, Sunday and Holidays, after the meeting.

6.6    Should the management representative's evaluation not be immediately available to the employee, such meeting will be scheduled within three (3) working days, excluding Saturday, Sunday and Holidays, from the date set, three (3) working days.

6.7    If the grievance is not satisfactorily settled in this Step, it must be reduced to writing on forms provided by the Union, signed by the employee and steward within five (5) working days, excluding Saturday, Sunday and Holidays, after the decision of the supervisor in this step was provided by Section 6.5 of this step, and must be appealed to Step 2 of the grievance procedure within said period. The grievance must state the date, the provision or provisions of the Agreement allegedly violated, and the remedy requested. The grievance as signed by the employee when reduced to writing shall be final.

6.8    Requests for pertinent records (as more fully described in 6.14 below) pertaining to the employee, necessary to the settlement of the grievance, shall be made by the area shop steward to the management representative at this step of the grievance procedure. If the records are readily available, they will be provided at this step; otherwise, the records will be provided at Step 2.

6.9    When the grievance is reduced to writing, there must be set forth in the spaces provided all of the following:

(a)    A complete statement of the grievance and the facts upon which it is based;

(b)    The remedy or correction which the grievant wishes the company to make; and

(c)    The section of this agreement, if any, which is claimed to have been violated.

#### STEP 2

6.10   When reduced to writing, the grievance shall be taken up, at a regularly scheduled meeting held once every two (2) weeks, if necessary, by the Union's Business Agent and at the Union's discretion, the local union, Treasurer or his/her delegate, the Record Company's Operations Center, and a company representative. Human Resources is included in an agenda letter for the company's Operations Center, and a company representative provided the grievance is included in an agenda letter for the first regularly scheduled meeting with management representatives, following the date it is received. Should the grievance be included in an agenda letter for the second regularly scheduled meeting with management representatives following the date the agenda letter. The decision of the management representatives shall be final and conclusive and binding upon the company, the employee, and the union.

6.14   A grievance which affects a substantial number of employees, and which the supervisor or Step 1 of this procedure lacks authority to settle, or grievances filed at this step directly initiated by the Union, may be filed with the company's Human Resources as provided by Section 6.10 step and must be reduced to writing on forms provided by the part of the Union. If the grievance is not satisfactorily settled, the matter may be referred to an arbitrator, as provided by the grievance procedure. The decision of the Human Resources by the Business Agent within the five (5) day appeal period.

5.6    If the grievance is not satisfactorily settled in Step 2, an appeal may be taken by the Union to the Director - Human Resources within five (5) working days after the decision of the Manager - Human Resources and his/her designated representative. The grievance shall then be scheduled for consideration and shall state between them a date within ten (10) working days of the appeal, the Director - Human Resources or his/her designated representative and a company representative shall meet with the Business Agent, the Recording Secretary or other Union representative, and the Grievant if he/she so desires.

## Step 3

5.7    The Secretary-Treasurer or his/her delegate, with permission of the Vice President - Human Resources or his/her delegate, may, within five (5) working days, request the Director - Human Resources for the purpose of observing first-hand the conditions under which the grievance has been appealed to this step of the procedure. Such observation is essential and material to the facts presented in such grievance. The decision of the Director - Human Resources or his/her designated representative shall be rendered as soon as possible, but not later than seven (7) working days after his/her meeting with the Secretary-Treasurer.

## ARBITRATION

5.8    The following grievances, if not settled in Step 3 of this Article, shall be submitted to arbitration upon the request of either party, provided such request is filed in accordance with the provisions of this Article.

(a)    A grievance alleging violation of Sections 5.1, 5.2, 5.3, 5.4, 5.5, 5.6 of Article V. Appendix A.

(b)    A grievance alleging violation of Sections 4, 5, 6, 7, or 8 of Appendix A.

(c)    A grievance alleging violation of Sections 6.2, 6.3, 6.4, 6.5, 6.7, 6.11, 6.12, 6.13, 6.14, 6.17, 6.24, 6.27, 6.28, 6.29, 6.30, 6.31, 6.34, 6.35, 6.37, or 6.38 of this Article.

(d)    A grievance alleging that an employee is not properly classified in his/her present job or that he/she performed the essential duties of a different job within the higher grade (higher than his/her assigned code) for a practicable majority of the time during a period of ninety (90) continuous working days, and then the employee should have been, within the available time of the arbitrator, classified into such higher job and the earnings he/she should have received had he/she been properly classified during the ninety (90) continuous working days immediately preceding the filing of the grievance.

(e)    A grievance regarding the date a grievance was first filed in writing.

(f)    A grievance alleging that, in administering the Hourly Job Rating Plan, subsequent to the effective date of this agreement, the company has established the labor grade of a new job improperly, or has changed the labor grade of an existing job because of a change in the job content. For the purpose of this subsection, a new job is one which the company has established to be a new job; it is not deemed to be a new job if it is described in one of the job descriptions as of the bargaining unit jobs performed by employees within the bargaining unit as described in this agreement and which, prior to that date, was furnished to the Union.

(g)    A grievance alleging violation of Sections 7.1, 7.2, 7.4, 7.7, 7.8, 7.9, 7.10, 7.11, 7.13, 7.18, 7.19, 7.20, 7.21, 7.22, 7.23, 7.24, 7.25, 7.27, 7.32 and 7.33 of Article VII.

(h)    Grievances alleging that an employee was laid off or not recalled in violation of the provisions of Article VIII herein.

(i)    A grievance by an employee alleging that his/her length of continuous service be improperly shown by the company's records is erroneous.

(j)    A grievance alleging violation of Sections 8.12, 8.13, 8.17, 8.18, 8.19, 8.20, 8.21, 8.22, 8.23(b), and 8.24 of Article VIII.

(k)    A grievance by an employee alleging that he/she was not promoted to a particular job in violation of the provisions of Section 8.15 of Article VIII. This, however, shall not apply in the case of a promotion to a working leader or new chief.

(l)    A grievance by an employee alleging that the company violated Article X by not paying him/her the proper vacation pay allowance under the provisions of Article X.

(m)    A grievance alleging violation of Sections 10.1 or 10.2 of Article X.

the parties hereto or in the absence of such agreement, the arbitrator shall be alternated with each grievance.

6.25 The fee and expense of the arbitrator shall be divided equally between the Company and the Union.

6.26 An employee who has a grievance may have the assistance of a steward in handling the grievance during working hours by requesting his/her foreman or supervisor to secure the appropriate steward for him/her. The foreman or supervisor shall thereupon arrange to secure the steward promptly. It is recognized that there are some occasions when reasonable delay in calling the steward may be necessary due to production problems.

6.27 The steward shall not be called for any employee to whom discipline is being administered until the administration of the disciplinary action shall have been completed.

6.28 Any grievance not presented for disposition through the grievance procedure described herein within five (5) working days excluding Saturday, Sunday, and holidays, after the incident giving rise to the grievance or from when the employee could have reasonably known of the incident, but in no event not later than fifteen (15) calendar days from the actual incident shall not thereafter be considered a grievance under this agreement. In the event of a promotional grievance, the fifteen (15) calendar day time period will commence when the Union receives the Bi-Weekly promotional list.

6.29 Should any appeal from the disposition of a grievance given at the Steps 1, 2 or 3 not be taken within five (5) working days, excluding Saturdays, Sundays, and holidays, from the date of such decision, then the decision on such grievance shall be final and conclusive and shall not be reopened for discussion. Any disposition of a grievance accepted by the Union, or from which no appeal has been taken, shall be final and conclusive and binding upon the grievant, the Company, and the Union.

6.30 In no event shall any disposition or award upon any grievance be made retroactive for any period prior to the date the grievance was first presented at Step 1.

6.31 A Union steward shall, after notice to and permission from his/her foreman or supervisor, be allowed to leave his/her job or department, if necessary, after making known his/her destination for the purpose of handling grievances in the manner hereinbefore provided. If permission is not given to the steward upon request, and if the grievance is of an emergency nature, the steward may request that the grievance be handled by the nearest steward.

Grievance Time Card

6.32 (a) The time so spent by a Union steward during his/her scheduled working hours shall be recorded on a special grievance time card. The steward shall receive pay for such time at his/her regular base hourly wage rate plus cost of living allowance

[16]

Article VI - Grievance Procedure

when applicable, including shift premium, if any, but excluding all other premiums and overtime allowances, not exceeding two (2) hours in any work week.

The Company will allow up to four (4) hours per week additional steward time to cover lost time for stewards who are absent. Such lost time hours will be deducted from the amount billed monthly to the Union, at a rate equal to a maximum Labor Grace Four, plus a cost-of-living allowance, excluding any shift premiums

(b) In the event there is no money owed to the Company for excess steward lost time, the Company has no obligation to credit the Union for such additional lost time hours mentioned above.

(c) Time spent by Union stewards which exceeds that amount allowed under this Article, time spent by the Union safety stewards and the Chief Safety Steward which exceeds that amount allowed under Letter III, time spent by job evaluation stewards which exceeds that amount allowed under Letter XIII and, time spent by the Recording Secretary which exceeds that amount allowed under Article VI, Section 6.33, will be billed to Teamsters Local No. 1150 on a monthly basis. Any monies due to the Company for this excess time, together with any applicable federal, state and/or local taxes, will be automatically deducted from the check drawn each month by the Company to the order of Sikorsky Teamsters Local No. 1150 for the total amount of dues and initiation fees deducted by the Company pursuant to Article V.

The Company will also provide to the Union a list of the stewards, Union safety stewards, Chief Safety Steward and/or Recording Secretary whose time exceeds the amount allowed pursuant to Article VI, Sections 6.32 and 6.33, Letter III, and Letter XIII.

6.33 The Recording Secretary or a notetaker designated by the Secretary-Treasurer will be excused from work to attend both Step 2 and Step 3 grievance meetings and will receive pay for such meetings at his/her regular base hourly wage rate plus cost of living allowance when applicable, including shift premium, if any, but excluding all other premiums and overtime allowances, not exceeding four (4) hours in any work week

6.34 Union stewards shall adhere to the following procedure in handling grievances as provided herein:

(a) Before handling a grievance, a Union steward shall obtain a special grievance time card from his/her foreman or supervisor and shall record the time he/she reports to perform grievance work on such card in the presence of his/her foreman or supervisor.

(b) When it is necessary for a Union steward to enter a department or a section of a department supervised by a foreman or supervisor other than his/her own, he/she

[17]

Article VI - Grievance Procedure

## ARTICLE VIII
## SENIORITY

8.1  In case of an indefinite layoff for lack of work, employees shall be laid off and recalled by non interchangeable occupational groups in accordance with their seniority (length of continuous service with the Company since the most recent date of hire).

8.2  Solely for the purpose of layoff and recall, there are two separate seniority areas

    (a)  The Development Flight Test Center located in West Palm Beach, Florida;

    (b)  All Connecticut operations locations

8.3  Whenever layoffs are necessary to reduce the working force in any job classification, the following procedure shall be applied.

    (a)  Probationary employees, if any, who are classified in the affected occupational group in labor grades the same as or lower than the job classification which requires reduction, shall first be laid off in whatever numbers are necessary, provided there remain other employees with seniority who are qualified and willing to perform the remaining work.

    (b)  Thereafter, employees with seniority classified in the affected job classification in the particular occupational group, but whose seniority is insufficient to entitle them to remain in their job classification shall be transferred, reclassified in a job in a lower labor grade, or laid off in accordance with the following.

        (1)  An employee with seniority who is excess as a result of reduction in force in his/her job classification (or an employee who is displaced by a senior employee, as provided below) will displace an employee of lesser seniority in the following order:

            (a)  The least senior employee in a job classification of the same labor grade in the particular occupational group.

            (b)  The least senior employee in the next and succeeding lower labor grades until the lowest labor grade in the particular occupational group is reached.

        (2)  An employee whose seniority is insufficient to displace any other employee in any other job classification of the same or lower labor grade in the same occupational group shall be laid off, provided there remain other employees with more seniority who are qualified to perform the remaining work.

[ 33 ]

Article VIII - Seniority

8.4    Any employee who accepts a demotion to a lower rated job in the same occupational group and seniority area, as a result of a reallocation following a layoff, shall be placed in such lower rated job at the maximum base hourly rate of the lower rated job or at the base hourly rate the employee is being paid immediately prior to the demotion, whichever is the lower; provided, however, that any resultant reduction in the employee's base hourly rate shall not be more than twenty-five cents ($.25) per hour at the effective date of the demotion nor more than an additional twenty-five cents ($.25) per hour at each subsequent sixteen (16) week interval.

8.5    Whenever there is an increase in the work force after a layoff, the reverse of the above layoff procedure shall be followed.

8.6    The non interchangeable occupational groups mentioned in 8.1, 8.3, and 8.4 have been mutually agreed upon and are incorporated and made part of this agreement as Appendix A attached hereto

8.7    Nothing herein shall preclude the Company from offering a transfer to an employee scheduled to be laid off from a job in one occupational group to a job in a different occupational group, nor from recalling without loss of seniority an employee laid off from one occupational group to a job in a different occupational group in which no laid-off employee retains seniority.

8.8    Due to the great amount of work involved in a layoff, it is agreed that in any layoff of three hundred (300) or more employees, the Company shall have a maximum period of ten (10) days from the date of the layoff during which the Union agrees that grievances arising out of the layoff will not be filed.

8.9    The Company, however, agrees to investigate and correct, where necessary, any claimed violations of this Article which are brought to its attention during this period. The Company shall not be liable for back wages claimed for any part of this period and arising out of an alleged violation of this seniority article. The five (5) day limitation on the presentation of grievances as provided in Section 6.28, of Article VI, Grievance Procedure, will not begin until the period mentioned in Section 8.8 has expired.

8.10   Before new employees are hired in a given occupational group, the employees with seniority who are still laid off from that occupational group shall first be offered employment in that occupational group from which they were laid off at the then existing rate of pay for the job to which they are recalled in accordance with seniority. Employees who were demoted as a result of a reallocation of employees following a layoff shall be considered to be on the recall list for their former job as though they had been laid off at the time of their demotion for the period of seniority retention provided in Section 8.22 and will be given the opportunity to return to that job as openings become available in accordance with their seniority

[ 34 ]

Article VIII - Seniority

## LETTER I

This is to confirm the understanding and agreement reached at recent contract negotiations between United Technologies Corporation and the Sikorsky Teamsters Local No. 1150 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, concerning a Cash Bonus payment.

Employees who are both on the payroll of the company and are covered by this agreement as of February 12, 1990, and covered employees whose employment terminated on or after February 13, 1990, and prior to July 20, 1990, shall receive on or before July 19, 1990, a Cash Bonus payment in the amount of three hundred fifty dollars ($350.00). No other employee or former employee shall be eligible for the Cash Bonus payment, nor any part thereof.

This Cash Bonus may be deposited in 25% increments into the current Savings Plan. Such deposit will be unmatched.

Accepted this ____ day of February, 1990.

SIKORSKY TEAMSTERS                    UNITED TECHNOLOGIES CORPORATION
LOCAL NO. 1150                        SIKORSKY AIRCRAFT DIVISION


_____              _____
Jack Powers                          John A. Caypino

54

APPENDIX #B

CONSTITUTION

INTERNATIONAL BROTHERHOOD OF

TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN

AND HELPERS OF AMERICA



# Constitution

Adopted by the
Las Vegas, Nevada Convention
June 14-17, 1976

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS
OF AMERICA

## ART. VI, SEC. 5

shall set a time and place for a hearing for the purpose of determining whether such temporary Trustee shall be appointed, and further provided that where, in the judgment of the General President, an emergency situation exists within the Local Union or other subordinate body, the temporary Trustee may be appointed prior to such hearing, but such hearing shall then commence within thirty (30) days and decision made within thirty (30) days after provided that in all cases the Local Union or other subordinate body shall be advised of the reason for the appointment. Adequate notice at least ten (10) days prior to the date of the hearing shall be given to the Local Union or other subordinate body involved. In the case of all hearings conducted prior to or after the establishment of a Trusteeship, the General President shall designate a panel composed of at least one (1) disinterested member of the International Brotherhood of Teamsters from the area involved. The General President may, at his discretion, appoint an employee of the International Union to such panel. Such representatives shall make their recommendations to the General President orally or in writing within sixty (60) days after the furnishing of the transcript of testimony, and the decision in the case shall be made by the General President himself, which decision shall be made within fifteen (15) days after such recommendations are received by him, and the decision shall be promptly transmitted to the Local Union or other subordinate body. Appeals, if any, from determinations following such hearings shall be taken directly to the General Executive Board. Appeals, if any,

[ 32 ]

## ART.

from the decision of the General Executive Board shall be taken to the Convention by only the Local Union or subordinate body affected. Procedures on appeals under this Section, insofar as is consistent with this Section, shall be governed by the provisions of Article XIX. The International Union shall not be responsible for any actions or activities of a Local Union or other subordinate body under Trusteeship unless such actions or activities have been directed or authorized by the Trustee.

The General Executive Board may modify or add to the procedures established herein for the purpose of assuring compliance with any applicable law.

The time requirements set forth in this Section shall not be mandatory but are only directory.

(b). The Trustee shall be authorized and empowered to take full charge of the affairs of the Local Union or other subordinate body, to remove any or all officers and appoint temporary officers at any time during his Trusteeship, and to take such preservation on of the Local Union or other subordinate body and its interests. The terms of office of officers so removed shall terminate as of the date of removal, unless otherwise absolved. The Trustee shall report from time to time on the affairs and transactions of the Local Union or other subordinate body to the General President. His acts shall be subject to the supervision of the General President. The General President may remove Trustees at any time and may appoint successor Trustees.

(c). The removed officers shall turn over all moneys, books and properties of the Local Union

[ 33 ]

or other subordinate body to the Trustee, who must receipt for the same.

(d). Temporary officers and Trustees must be members in good standing of Local Unions in good standing. They must give bonds for the faithful discharge of their duties. The General President to whoever appointed them, which satisfactory to whoever appointed them, which shall not be less than the amount of money they are apt to handle.

(e). The Trustee shall take possession of all the funds, books, papers and other property of the Local Union or other subordinate body and render a receipt for same. He shall pay all outstanding claims, properly proved, if funds are sufficient. If the funds are not sufficient he shall settle the most worthy claims, as his judgment dictates, unless otherwise provided for in this Constitution. In the event the charter of the Local Union or other subordinate body is suspended or revoked, all its funds, books, papers and other properties shall be forwarded to the General Secretary-Treasurer, who shall hold them for the purpose of reorganization, if no reorganization occurs within a period of two (2) years, such funds shall be transferred to the general fund.

(f). In all cases of Trusteeships, the Trustee shall make a report to the General President at intervals of no more than every six (6) months, which report shall contain his recommendations with respect to whether the Trusteeship shall be continued or terminated.

The first (1st) such report shall be made within six (6) months after the date of the decision following the hearing on the appointment of a Trustee.

[ 34 ]

(g). Additionally, the Local Union, or other subordinate body in regular or special membership meeting, by a majority vote, may petition the President for the restoration of self-government, provided for the restoration of self-government, provided that no such petition shall be presented at intervals of less than six (6) months starting with the date of the decision following the first hearing on the appointment of the Trustee.

(h). When a Local Union or other subordinate body, petitions for restoration of self-government as herein provided, it shall be accorded a hearing which shall be commenced within thirty (30) days and decision made within thirty (30) days after the receipt of the transcript, which hearing shall be held in the same manner as provided in Section 5(a) of this Article relative to hearings on initial appointment of Trustees.

(i). When it is determined by the General President or the General Executive Board that self-government be restored, the Trustee shall direct an election at such time as he may designate, any other provision of this Constitution or Local Union rules or Bylaws to the contrary notwithstanding. The Trustee shall not install the officers elected at such election until directed to do so by the General President. Upon such installation the Trusteeship shall terminate and the Trustee shall return all remaining funds, property, books and papers to the appropriate officers of the Local Union or other subordinate body. Subsequent to the release of the Local Union from Trusteeship a terminal audit shall be prepared. The term of office of the newly elected officers shall be for not more than three (3) years in the case of a Local Union, or four (4) years in the case of any other

[ 35 ]



TEAMSTERS UNION LOCAL #1150
SIKORSKY AIRCRAFT, HELICOPTER
AND MISSILE EMPLOYEES
390 EAST MAIN ST. - STRATFORD, CT 06497
PHONE 381-9240
Affiliated With The International Brotherhood of Teamsters
Chauffeurs, Warehousemen and Helpers of America

MEMBER IDENTIFICATION CARD
Local Union No. 1150
Stratford, CT 06497
CITY          STATE  ZIP CODE
AFFILIATED WITH THE
INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA
AFL-CIO
Thomas J. Jeffreys, Jr.
NAME
32035   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   1/74
LEDGER NO.   SOC. SEC. NO.   INITIATED
Sec.-Treas.
SIGNATURE AND TITLE

## ART. VII, SEC. 3

ployed within the jurisdiction of the International Union, and before final issuance, must be approved by the General President, the General Secretary-Treasurer and the General Executive Board.

All Local Union charter applications must initially be submitted to the Joint Council or to the Conference (if there is no Joint Council) having jurisdiction in the area, which shall then forward such application to the General Secretary-Treasurer with an indication of whether such application has the approval or disapproval of such body. All other charter applications shall be submitted directly to the General Secretary-Treasurer. The General Secretary-Treasurer shall submit all charter applications to the General Executive Board. In determining whether to issue a Local Union charter, the General President, the General Secretary-Treasurer and the General Executive Board shall take into consideration, but shall not be bound by, the position of the Joint Council or Conference in the matter. If the General President, the General Secretary-Treasurer and the General Executive Board approve the issuance of a charter, the General President and the General Secretary-Treasurer shall sign and the General Secretary-Treasurer shall issue and deliver the charter to the organization for which application for charter has been made. Such charter shall be revoked unless within thirty (30) days after the election of officers of the organization, the contract set forth below has been signed by the President and Secretary-Treasurer of such organization and returned to the General Secretary-Treasurer. Applications for revisions of existing charters shall be

[ 42 ]

## ART. VII, SEC. 3

processed in accordance with the procedures outlined in this Section.

Charters may be issued to a Local Union, the territorial jurisdiction of which shall not be limited to any particular geographic area, upon such terms and under such conditions as the General Executive Board shall consider appropriate, notwithstanding any other provisions of this Constitution.

Affiliation with, and the issuance of a charter by, the International Union and compliance with all the provisions and requirements of this International Constitution are in no way conditioned upon the affiliation or non-affiliation of the International Union with any other organization either at the time of the issuance of a charter or subsequent thereto.

The General Executive Board shall have the authority to change the jurisdiction granted or set forth in the charter at any time in its sole discretion.

The following Charter Contract and the rights, duties and obligations set forth therein are a part of this Constitution as though set forth in this Article herein:

### CHARTER CONTRACT

Know all men by these presents, that I, ................................................................ , Secretary-Treasurer of the ............................................................. Local Union (Joint Council or other subordinate body), located at ............................................................. , being authorized to act for said Local Union (Joint Council or other subordinate body), in consideration of the General Secretary-Treasurer's issuing a charter to said Local

[ 43 ]

## ART. VII, SEC. 3

Union (Joint Council or other subordinate body) hereby agree; that said charter shall remain the property of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and in consideration of the premises herein stated, when the charter is framed, the frame shall immediately become the property of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; that said Local Union (Joint Council or other subordinate body) shall have custody of said charter until it is demanded by some person authorized to make such demand, in accordance with the International Constitution, and the charter and frame shall then be delivered to the person so authorized to demand and procure the same; and that any person so authorized may enter any premises occupied by the said Local Union (Joint Council or other subordinate body) or any of its members and take possession and remove the said charter.

I do further recognize and acknowledge in behalf of Local Union .................. (Joint Council or other subordinate body) that the name and all rights and privileges hereunder are granted this Local Union (Joint Council or other subordinate body) by the International Union, and that all books, documents, contracts, name, moneys, funds and property of any nature and description which may be obtained, accumulated and maintained by this Local Union (Joint Council or other subordinate body) will result, be obtained, accumulated or maintained by the granting of this charter and the rights and privileges thereunder; and that therefore, in the event this charter is revoked, or this Local

[ 44 ]

## ART. VII, SEC. 4

Union becomes defunct, all books, documents, contracts, name, moneys, funds and property shall belong to and shall be delivered over to the International Union by it to be retained as provided for in Article X, Sections 13 and 14 of the Constitution until the charter is reinstated or a successor Local Union (Joint Council or other subordinate body) or Local Unions (Joint Councils or other subordinate bodies) are chartered.

I do further agree in behalf of Local Union ................(Joint Council or other subordinate body) that it will abide by the provisions of the International Constitution and amendments thereto, all of which are incorporated herein by reference.

By its Secretary-Treasurer

------------------------------------

### Financial Report

Section 4 (a). The General Secretary-Treasurer shall issue annually a financial report summarizing the assets and liabilities of the International Union and stating the net worth of that organization and the receipts and disbursements together with a Certified Public Accountant's statement as set forth in Section 1 of Article VIII. Such a report shall be published annually in the official Journal of the International Union. At any time a financial report is requested by the General Executive Board, the General Secretary-Treasurer shall furnish such a report consisting of a statement of assets, liabilities and net worth of the International Union.

[ 45 ]

dollars and fifteen cents ($3.15) per month, effective October 1, 1977, payable for the current month not later than the twentieth (20th) day of the succeeding month unless otherwise determined by the General Executive Board in extreme hardship cases.

The present two dollars and fifteen cents ($2.15) per capita tax shall continue through September, 1976, payable in October, 1976; and the per capita tax of two dollars and sixty-five cents ($2.65) shall become effective October 1, 1976, payable for the month of October, 1976 in November, 1976; and the per capita tax of three dollars and fifteen cents ($3.15) shall become effective October 1, 1977, payable for the month of October, 1977 in November, 1977, unless otherwise determined by the General Executive Board as above provided.

Per capita tax must be paid not only on dues-paying members but also on all persons paying agency shop fees, periodic service fees and hiring hall fees to the Local Union.

Persistent failure of a Local Union to comply with this subsection shall subject the Local Union to charges by the General Executive Board only.

(c). The General Secretary-Treasurer shall receipt for all initiation fees and per capita tax.

(d). Dues of members of the International Union, payable through their respective Local Unions, shall not be less than eight dollars ($8.00) per month, provided, however, that in the case of newly organized members, for whom there is no established wage scale, dues shall be no less than

[ 60 ]

six dollars ($6.00) per month; and provided, further, that the General Executive Board shall have the authority to reduce the foregoing minimum in extreme hardship cases. Newly organized members whose dues are established at a rate less than the eight dollars ($8.00) per month minimum shall pay dues at the minimum rate of eight dollars ($8.00) per month no later than the expiration date of their first collective bargaining agreement. In the case of Local Unions chartered after the 1976 Convention and before October 1, 1978, unless otherwise approved by the General Executive Board, the dues of the members of such Local Union shall not be less than six dollars ($6.00) for the first (1st) year following such chartering and thereafter the eight dollars ($8.00) minimum shall apply; and in the case of Local Unions chartered after October 1, 1978, the dues of the members of such Local Union shall not be less than seven dollars ($7.00) for the first (1st) year following such chartering and thereafter the eight dollars ($8.00) minimum shall apply.

All dues, whether below, at or above the minimum of eight dollars ($8.00) shall be increased by no less than two dollars ($2.00) per month effective October 1, 1976, and an additional one dollar ($1.00) per month effective October 1, 1977. In addition, members whose rate of dues on October 1, 1977 is less than two times their hourly earnings shall have their monthly dues increased up to the equivalent of two times their hourly earnings or by an additional one dollar ($1.00), whichever is a lesser amount. Effective October 1, 1978, and each October 1 thereafter, members whose rate of dues

[ 61 ]

## ART. X, SECS.

thereof for a subordinate body and any initiation fees, to be paid, other fees owing to a Local Union by any ...ember or other person, prospectively, and/or retro-actively, whenever the Board determines that such waiver is in the best interest of the International Union.

The General Executive Board shall have the power to waive the payment of any fees to the International Union or any subordinate body to im-plement any arrangement with any other interna-tional union providing for the transfer of members or the acceptance of members who may be on with-drawal card status.

### ARTICLE XI

#### FINANCE COMMITTEE—DUTIES

Section 1. There shall be a Finance Committee consisting of seven (7) members of the General Executive Board, namely, the General President, the General Secretary-Treasurer, and five (5) Vice-Presidents selected by the General Executive Board. A quorum of the Finance Committee shall consist of any five (5) members thereof. The General Execu-tive Board shall have the power to remove any selected member of the Finance Committee by a majority vote. It shall be the general function of the Finance Committee, by majority vote, to pass upon and approve all investments of the funds of the International Union, and no investment of such funds can be made without such approval. It shall, however, be the specific function of the General President and the General Secretary-Treasurer to

[ 72 ]

## ART. XI, SECS. 2-3—ART. XII, SEC. 1

make all investments of the funds of the Interna-tional Union, subject to the subsequent approval of the Finance Committee, and the General Secretary-Treasurer shall at all times keep the General Execu-tive Board advised of all such investments.

All investments will be such as may be made by fiduciaries by the laws of the Commonwealth of Massachusetts.

Securities purchased shall be kept in a safety deposit box or boxes or held in safekeeping by a bank or banks approved by the General Executive Board.

Section 2. Each member of the Finance Com-mittee shall be bonded in such sum and in such manner as the General Executive Board shall re-quire.

Section 3. The General Executive Board shall be empowered, when it deems it necessary for the maintenance, protection and preservation of the labor movement, to make loans or advances to other labor organizations. No other loan of any nature whatsoever shall be made from funds of the Inter-national Union except upon approval of the Finance Committee and the General Executive ...

### ARTICLE XII

#### STRIKES, LOCKOUTS, WAGE SCALES, DISPUTES OVER JURISDICTION

#### Strike Action by Local Unions

Section 1 (a). When any difficulty or dispute arises between the members of any Local Union and their employers, it shall be the duty of the officers of such Local Union to use every possible means of

[ 73 ]

ART. XIX-A, SEC. 7

(3) Embezzlement.

(4) Secession, or fostering the same.

(5) Abuse of fellow members and officers by written or oral communication.

(6) Abuse of fellow members or officers in the meeting hall.

(7) Filing charges in bad faith or out of malice.

(8) Any action which is disruptive of, or interferes with the performance or obligations of other members or Local Unions under collective bargaining agreements.

(9) Crossing an authorized picket line established by the member's Local Union or any other subordinate body affiliated with the International Union.

### Specific Offenses

Section 7. Any member who (1) knowingly goes to work or remains in the employment of any person, firm or corporation, whose men are on strike or locked out, unless he has permission of the International Union, the Joint Council or the Local Union. Any member who (2) knowingly gives or attempts to give, directly or indirectly, any information to any employer on an unfair list or whose men are on strike or locked out, or whose men are trying to secure an agreement or an improvement in their working conditions, or whose men are trying to prevent an increase in hours of labor or a decrease in wages, for the purpose of assisting such employer, or for any gain or promise of gain; or who (3) knowingly goes to work or

[ 124 ]

ART. XIX, SECS. 8-9

remains... ...ployment of any person, firm or corporation, ...an unfair list of the International Union without permission from the International Union, the Joint Council or his Local Union, may be tried in the manner provided for the trial of other offenses.

### Refusal to Return Records

Section 8. Any member (1) who wrongfully takes or retains any money, books, papers or any other property belonging to the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, any Joint Council, Local Union, or other subordinate body or (2) who destroys any books, bills, receipts, vouchers, or other property of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers or America, any Joint Council, Local Union or other subordinate body, may be tried in the manner provided for the trial of other offenses.

### Decisions and Penalties

Section 9 (a). Decisions and penalties imposed upon individual members, officers, elected Business Agents, Local Unions, Joint Councils or other subordinate bodies found guilty of charges may consist of reprimands, fines, suspensions, expulsions, revocations, denial to hold any office permanently or for a fixed period or commands to do or perform, or refrain from doing or performing, specified acts. If the penalty is by way of fine, then the same must be paid pending an appeal, if one is taken, unless the General President upon request waives payment pending appeal. A Local Union ordered to reinstate

[ 125 ]

## LOCAL UNIONS

### Bylaws

Section 1. Each Local Union shall adopt its own separate Bylaws which must comply, and may not conflict, with the provisions of the International Constitution. Said Bylaws shall designate as the principal executive officer the President, the Secretary-Treasurer or the Recording Secretary.

The principal executive officer shall, in general, supervise, conduct and control all of the business and affairs of the Local Union, its officers and employees. He shall have charge and supervision of all the officers and employees of the Local Union including elected Business Agents. The principal executive officer shall also have charge of all labor controversies involving the Local Union.

### Officers

Section 2 (a). The officers of the Local Union shall consist of a President, Vice President, Recording Secretary, Secretary-Treasurer and three (3) Trustees. These officers shall constitute the Executive Board of the organization. Meetings of Local Union Executive Boards shall be no less frequent than meetings of the Local Union. The meetings of the General Executive Board, Conference Policy Committees and the Executive Boards of Local Unions and all other subordinate bodies shall be open only to those persons who have been specifically permitted to attend by such Boards or Committees.

[ 132 ]

(b). A Local Union Executive Board shall not have the authority to bind the Local Union for personal services to be rendered to the Local Union or its Executive Board, such as, but not limited to, legal, accounting, consulting, public relations and editorial services, by contract, agreement or otherwise, beyond the expiration of the term of the Executive Board in office at the time such action is taken.

### Terms of Office

Section 3 (a). The term of office of Local Union officers and elected Business Agents shall be no longer than that of International officers or that provided for by law and shall not be for a lesser period than three (3) years, except where necessary to bring the terms of office of all officers into concurrence or in order to provide for a schedule of nominations and elections in accordance with Article XXII, Section 4 (a).

(b). When an election is held in connection with the release of a Local Union from Trusteeship, the terms of the officers elected shall commence as of the effective date the Local Union is formally released from Trusteeship by the General President and shall terminate on December 31 of the second full year thereafter.

(c). A member may hold office in more than one Local Union only with the approval of the General President, even though the person involved has not been a member of the second Local Union prior to holding office. Such officer shall be entitled to

[ 133 ]